IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **JONATHAN BRADY LeCROY,** ) | |
| ) | |
| Movant/Defendant, ) | |
| ) | |
| v. ) | 1:09-cr-0307-LSC-JEO |
| ) | 1:13-cv-8038-LSC-JEO |
| **THE UNITED STATES OF** ) | |
| **AMERICA,** ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

The cases referenced above are before the court on the *pro se* motion of defendant Jonathan Brady LeCroy to vacate, set aside, or correct his federal conviction and sentence pursuant to 28 U.S.C. § 2255. (Doc. 1, Crim. Doc. 22).[1] On October 23, 2015, the magistrate judge to whom the case was referred entered a report and recommendation pursuant to 28 U.S.C. § 636(b), recommending that the motion to vacate be denied. (Doc. 10 ("R&R")). On November 9, 2015, LeCroy filed a timely objection to the R&R. (Doc. 11).

**I.**

On October 1, 2009, LeCroy pled guilty in this court pursuant to a plea agreement to five counts of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and one

---

[1]References herein to "Doc(s). ___" are to the document numbers assigned by the Clerk of the Court in the present § 2255 civil case, *LeCroy v. United States*, No. 1:13-cv-8038-LSC-JEO (N.D. Ala. 2013). References herein to "Crim. Doc(s). ___" are to the document numbers assigned by the Clerk of the Court in the defendant's underlying criminal case, *United States v. LeCroy*, No. 1:09-cr-307-LSC-JEO (N.D. Ala. 2009). Unless otherwise noted, pinpoint citations are to the page of the electronically filed document, which may not correspond to pagination on the "hard copy" presented for filing.

count of receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). On January 19, 2010, the court entered a judgment that sentenced him to 110 months imprisonment on each count, to run concurrently. Under his plea agreement, LeCroy waived his right to appeal and, with limited exceptions, his right to seek postconviction relief under § 2255. (Crim. Doc. 17 at 8-9). Consistent with that agreement, LeCroy did not pursue a direct appeal. LeCroy now insists, however, that his sentence is due to be vacated for lack of jurisdiction on the ground that Congress lacked authority under the Commerce Clause to enact the anti-child-pornography statutes under which he stands convicted. In support, he relies primarily upon *National Federation of Independent Business v. Sebelius*, ___ U.S. ___, 132 S. Ct. 2566 (2012) ("*Sebelius*"), which he claims established a "new rule of constitutional law ... that the Commerce Clause does not give Congress the power to regulate activities that are not commerce, not commercial, and not economic." (Doc. 1 at 1). For its part, the Government has argued that LeCroy's § 2255 motion is due to be denied, both because it is both untimely under 28 U.S.C. § 2255(f) and because it is without merit.[2] (Doc. 4).

      The magistrate judge recommended that LeCroy's motion be denied, concluding that his Commerce Clause arguments under *Sebelius*, whether couched as an assertion of actual innocence to avoid the time bar, a freestanding basis for collateral relief, or both, are barred by binding Eleventh Circuit precedent. In support, the magistrate judge first recognized that, prior to *Sebelius*, the Eleventh Circuit had rejected similar Commerce Clause challenges to both § 2252A(a)(5)(B)'s possession offense and 18 U.S.C. § 2251(a)'s prohibition against production of child pornography in *United States v. Smith*, 459 F.3d 1276, 1284-85 (11th Cir. 2006), and

---

[2]For whatever reason, however, the Government has not raised LeCroy's plea-agreement waiver of his right to seek § 2255 relief as a bar to his instant claims.

*United States v. Maxwell*, 446 F.3d 1210, 1216-19 (11th Cir. 2006).  (R&R at 3).  Next, the magistrate judge reasoned that *United States v. Lopez,* 215 F. App'x 863, 864 & n.3 (11th Cir. 2007)*,* and *United States v. Bobb*, 577 F.3d 1366, 1373 (11th Cir. 2009), indicate that the analysis of *Smith* and *Maxwell* also applies to LeCroy's conviction for receiving child pornography in violation of § 2252A(a)(2).  (R&R at 3-4).  And finally, the magistrate judge concluded that the Eleventh Circuit's post-*Sebelius* decisions in *United States v. Grzybowicz*, 747 F.3d 1296, 1307 n. 9 (11th Cir. 2014), and *United States v. Parton*, 749 F.3d 1329, 1331-32 (11th Cir. 2014), make it clear that, contrary to LeCroy's assertion, *Smith* and *Maxwell* are still good law.  (R&R at 4-5).  The undersigned has held likewise in denying a prior § 2255 motion.  *See Cobb v. United States*, 2014 WL 6893085 (N.D. Ala. Dec. 5, 2014), appeal pending, No. 15-13352 (11th Cir. July 23, 2015).

## II.

In his objection, LeCroy argues that the magistrate judge's analysis is erroneous.  First, he suggests that *Grzybowicz* and *Parton* are distinguishable from his case because those defendants were convicted of production of child pornography, not merely possessing or receiving it.  (Doc. 11 at 22-23).  This argument has no merit.  The defendant in *Grzybowicz* was convicted of producing, receiving, and possessing child pornography, and he contended that each of the underlying statutes, 18 U.S.C. §§ 2251(a), 2252(a)(2), and 2252A(a)(5)(B), exceeded the Commerce Clause power.  *Grzybowicz*, 747 F.3d at 1307 n. 9.  The Eleventh Circuit expressly rejected that claim as to all three statutes, concluding that it was foreclosed by *Smith* and *Maxwell*.  *Id.*  It is true that *Parton* involved a Commerce Clause challenge under *Sebelius* only as it related to production of child pornography under § 2251(a).  *See Parton*, 749 F.3d at 1329.  But that fact is immaterial.  *Maxwell* held that possession of child pornography sufficiently

3

affects interstate commerce so as to authorize Congress's enactment of § 2252A(a)(5)(B). *See* 446 F.3d at 1218-19. That holding was later applied to deny a similar claim in *Smith* and further extended to defeat that defendant's Commerce Clause argument directed to his conviction for production of child pornography under § 2251(a). *See* 459 F.3d at 1285 & n. 8. Because the defendant in *Parton* was challenging only a conviction for production, that appeal, strictly speaking, implicated only *Smith*'s *extension* of *Maxwell*'s analysis to § 2251(a), not *Maxwell*'s holding that the possession offense of § 2252A(a)(5)(B) does not offend the Commerce Clause. Nonetheless, the *Parton* court recognized that *Sebelius* had not undercut the vitality of either *Smith* or *Maxwell*:

> We conclude that the Supreme Court in *Sebelius* said nothing to abrogate its holding in [*Gonzales v. Raich*, 545 U.S. 1 (2005)] to the effect that Congress has the power, as part of a comprehensive regulation of economic activity, to regulate purely local activities that are part of an economic "class of activities" that have a substantial effect on interstate commerce. Similarly, *Sebelius* said nothing to abrogate the holdings of this court in [*Smith*] and [*Maxwell*], which closely followed the rationale of *Raich*.

*Parton*, 749 F.3d at 1331. Accordingly, as the magistrate judge concluded, both *Smith* and *Maxwell* remain good law after *Sebelius*.

### III.

Next, LeCroy objects on the ground that the magistrate judge failed to address LeCroy's arguments that rely on two other recent Supreme Court decisions issued since *Sebelius*: *Bond v. United States*, ___ U.S. ___, 134 S. Ct. 2077 (2014), and *Paroline v. United States*, ___ U.S. ___, 134 S. Ct. 1710 (2014). (Doc. 11 at 2, 20-26). He argues that those two cases also cast doubt on *Smith* and *Maxwell*. It is true that the R&R does not address *Bond* or *Paroline*, which LeCroy raised in a supplemental submission (*see* Doc. 9), but neither case aids LeCroy's cause.

First, LeCroy misreads *Bond*, which was issued shortly after *Grzybowicz* and *Parton*.

LeCroy asserts that *Bond* held that "the Federal Government did not have jurisdiction under three enumerated powers including the Commerce Clause" to enact the federal criminal statute there at issue. (Doc. 11 at 3). However, what *Bond* actually held was that 18 U.S.C. § 229, which prohibits the use or possession of "any chemical weapon," did not reach the defendant's conduct in the first place. 134 S. Ct. at 2087-94. That allowed the Court to avoid the defendant's constitutional argument that Congress lacked authority to enact the statute as a necessary and proper means to execute the National Government's power to make treaties, in that case the international Chemical Weapons Convention. *See id.* at 2087; *see also United States v. Fries*, 781 F.3d 1137, 1148 (9th Cir. 2015) (recognizing that the *Bond* "Court declined to consider the constitutionality of § 229, but held that the statute was inapplicable to Bond's conduct"). In short, while *Bond* does generally discuss principles of federalism as it related to the Court's assumptions in interpreting the reach of § 229 to ostensibly local crimes, the case does not purport to define the scope of the Commerce Clause; indeed, the Government disavowed reliance on that argument on appeal. *Bond*, 134 S. Ct. at 2087. Thus, *Bond* does not call into question prior authority upholding anti-child-pornography statutes against Commerce Clause attacks. *See United States v. Rivers*, 598 F. App'x 291, 291-92 (5th Cir. 2015); *cf. United States v. Gibson*, 615 F. App'x 619, 620 (11th Cir. 2015) (rejecting argument that *Bond* abrogates *Scarborough v. United States*, 431 U.S. 563 (1977), holding that there need only be a "minimal nexus" between a firearm and interstate commerce to support a conviction for unlawful possession of a firearm by a convicted felon); *Soto v. United States*, 2014 WL 2993800, at *5 (M.D. Fla. July 3, 2014) (recognizing that *Bond* does not "overturn[ ] the Court's holding in *Gonzales v. Raich* that the [Controlled Substances Act] is a constitutional exercise of Congress' regulatory power pursuant to the Commerce Clause."); *United States v. Looney*, 606 F. App'x 744, 747 (5th Cir. 2015)

(rejecting claim that *Bond* might support that Congress did not intend for § 2251(a) to reach the defendant's conduct in producing child pornography).

LeCroy also misconstrues *Paroline*, which was handed down just after *Grzybowicz* and just before *Parton* and *Bond*. LeCroy seems to read *Paroline* as holding or implying that receiving and possessing child pornography can no longer be federal crimes, on the theory that "the 'victim' only exists during the production of child pornography, not during the possession nor the receipt of said depictions." (Doc. 11 at 26). "The viewing of inappropriate pictures," LeCroy says, "is not an proximate cause nor a remote cause to the abuse depicted on the pictures." (*Id.* at 25). This argument is meritless. *Paroline* has nothing to do with whether possession or receipt of child pornography is or can be a federal crime. Instead, the Supreme Court held in *Paroline* that a defendant convicted of possessing child pornography may be ordered to pay restitution under 18 U.S.C. § 2259 to a victim depicted in the subject images based on the extent to which the defendant's own conduct proximately caused the victim's losses, 134 S. Ct. at 1722, considering the defendant's relative role in the causal process. *Id.* at 1727. Even insofar as LeCroy is suggesting that *Paroline* held that a defendant who merely possesses child pornography cannot be made to pay restitution under § 2259 to a depicted child, he is wrong. *See* 134 S. Ct. at 1726-27 ("The unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse—including Paroline—plays a part in sustaining and aggravating this tragedy. And there can be no doubt Congress wanted victims to receive restitution for harms like this."). But more importantly for present purposes, LeCroy's § 2255 claims do not attack the fact or amount of an order of restitution. And even if they did, a restitution order is not subject to challenge in a § 2255 proceeding in any event. *See Mamone v. United States*, 559 F.3d 1209, 1211 (11th Cir. 2009). *Paroline* does not help LeCroy.

**IV.**

Finally, LeCroy objects to the R&R on the ground that it did not specifically address five arguments contained in his § 2255 motion. (Doc. 11 at 26). These claims can be summarized as following:

> (1) LeCroy lacked "criminal intent" because he allegedly did not "knowingly" possess or receive child pornography (*id.*);
> 
> (2) that the "Federal Government can not regulate local activities by the powers granted by the United States Constitution" (Doc. 1 at 11; Doc. 11 at 26);
> 
> (3) federal statutes criminalizing possession and receipt of child pornography are unconstitutional under *Sebelius* because such statutes are based on a "prophecy" that those whose possession is intrastate in character are nonetheless "likely" in the future to enter the interstate market for such pornography (Doc. 1 at 13; Doc. 11 at 26);
> 
> (4) "[Neither] the computer nor the Internet can be used as jurisdictional hooks" to support LeCroy's convictions (Doc. 11 at 26; *see also id.* at 7-10; Doc. 1 at 13-14); and
> 
> (5) "A variety of sentencing enhancements [under U.S.S.G. § 2G2.2(b)] are unconstitutional" (Doc. 11 at 26; *see also* Doc. 1 at 14).

Claims (2) and (3) are merely variants of LeCroy's argument that *Sebelius* implies that his convictions are invalid under the Commerce Clause. Accordingly, those claims are due to be rejected for the reasons stated in the magistrate judge's R&R and the discussion herein. Claim (4), asserting that LeCroy's use of a computer and the internet to receive and store images of child pornography cannot establish a jurisdictional nexus to interstate commerce, is likewise foreclosed by binding precedent. *See Grzybowicz*, 747 F.3d at 1306-07; *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004); *see also United States v. Bilus*, ____ F. App'x ___, ___, 2015 WL 5331882, at *10 (11th Cir. Sept. 15, 2015); *United States v. Machtley*, 163 F. App'x 837, 838-39 (11th Cir. 2006); *Cobb*, 2014 WL 6893085, at *6.

In Claim (1), LeCroy generally argues that he did not "knowingly" receive or possess child pornography, based on an assertion that he "downloaded *free* unseen-unknown filed folders by title or search word only, not by thumnail or picture." (Doc. 1 at 10 (emphasis original)). However, this claim is due to be denied because it is both barred by the statute of limitations and without merit. As to timeliness, a one-year statute of limitations applies to § 2255 motions. 28 U.S.C. § 2255(f). The limitations period for this claim commenced running when LeCroy's conviction became final. 28 U.S.C. § 2255(f)(1). Where, as here, a defendant does not pursue a direct appeal, his conviction becomes final upon the expiration of the period in which he might have filed a timely notice of appeal. *See Murphy v. United States*, 634 F.3d 1303, 1307 (11th Cir. 2011). This court entered its judgment against LeCroy on January 19, 2010, so his conviction became final 14 days later, on February 2, 2010, when his appeal time lapsed. *See* FED. R. APP. P. 4(b)(1)(A). The statute of limitations of § 2255(f) then expired one year later, on February 2, 2011. LeCroy, however, cannot be deemed to have filed his § 2255 motion until at least July 2, 2013, the day he signed the motion. *See Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001). Thus, his § 2255 claim is time barred by more than two years. In fact, LeCroy admits this to be so. (Doc. 7 at 2). Nonetheless, he maintains that he can overcome the statute of limitations pursuant to *McQuiggin v. Perkins*, ___ U.S. ___, 133 S. Ct. 1924 (2013), because he allegedly is actually innocent. (*See* Doc. 7 at 2-4). However, LeCroy's claim of actual innocence is based on his legal argument that, following *Sebelius*, it can no longer be said that possession or receipt of child pornography constitutes a federal crime. It is possible to establish actual innocence based on a showing that a legal decision issued subsequent to a guilty plea has established that the defendant's conduct did not actually violate federal law. *See, e.g., Bousley v. United States*, 523 U.S. 614 (1998). But because the court has rejected LeCroy's

8

argument based on *Sebelius* in its entirety, his claim of actual innocence also fails.

LeCroy also seems to suggest that he might be eligible for equitable tolling of the limitations period (*see* Doc. 7 at 5-6), which is available if a petitioner "shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citation and internal quotation marks omitted); *see also Williams v. United States*, 491 F.3d 1282, 1284 (11th Cir. 2007). However, the only putative "extraordinary circumstance" that LeCroy offers is that he is a layman, untrained in the law. (*See* Doc. 7 at 6). That is insufficient to justify equitable tolling. *See Rivers v. United States*, 416 F.3d 1319, 1323 (11th Cir. 2005); *Aureoles v. Secretary, DOC*, 609 F. App'x 623, 624 (11th Cir. 2015); *Perez v. Florida*, 519 F. App'x 995, 997 (11th Cir. 2013); *DeLeon v. Florida DOC*, 470 F. App'x 732, 734 (11th Cir. 2012). Accordingly, this claim is due to be denied as time barred.

LeCroy's claim that he did not "knowingly" receive or possess child pornography is also due to be rejected on the merits. If LeCroy's emphasis on the fact that the images he downloaded were "free" is intended as a Commerce Clause attack, it is rejected for reasons already stated. Likewise, his intimation that his downloading of child pornography was merely accidental or that he is somehow a victim of circumstance is simply disingenuous. LeCroy pled guilty in open court to all six charges in the indictment. He has not shown that such plea was not made knowingly and voluntarily. While a transcript of the guilty plea hearing is not included in the record, the court notes that LeCroy stipulated in his plea agreement to the following statements of facts:

> On June 22, 2009, the Alabama Bureau of Investigation, Jacksonville Post, received a call from Alabama State Trooper John Lewis. Trooper Lewis advised that his nephew, a 15 year old juvenile, was fishing in close proximity to a bridge

9

on the Tallapoosa River near 1135 County Road 73, Heflin, Alabama 36264, and found several black garbage bags that were thought to contain printed images of child pornography, as well as six digital cd's and three video tapes. The bags also contained a notebook which appeared to be a journal kept by someone who refers to himself as "slim." The journal describes short stories of children being abused by adults. One of the bags also contained a "how to" book about molesting children. This book is labeled Sexual Abuse of Children in America which tells the children's views of being sexually abused and the law enforcement methods used to detect the abuser. Several chapters tell of the court process involved in the prosecution of sex offenders.

All of these bags were recovered by Trooper John Lewis and brought to the Alabama State Patrol's Jacksonville Post located at 1703 Pelham Road South, Jacksonville, Alabama 36265.

Sergeant Pat Price of the Jacksonville Post contacted Special Agent Larry Crocker of the Alabama Bureau of Investigation Internet Crimes Against Children Task Force. Special Agent Larry Crocker responded to the Jacksonville post on June 23, 2009. Once there SA Crocker reviewed the found evidence which contained several printed images of what he believed to be prepubescent children in various stages of undress involved in sexual acts. At least two of these images (Count Three) showed a footer printed at the bottom of the page with the website names: www.laikateen.narod.ru and www.preteendigest.org.

The three video tapes (Count Two) contained video of a white male who has been identified as Jonathan Brady LeCroy masturbating while viewing images of child pornography on his computer. LeCroy narrates his activities by describing what sex acts he would do to the children on the screen. SA Crocker reviewed the digital cd's (Count One) and confirmed the presence of approximately 200 images of what he believes to be child pornography as defined by Title 18, United States Code, Section 2256. SA Crocker is familiar with some of these images from previous investigations involving child pornography. Based on the information above, a federal search warrant was obtained and executed [at the residence where LeCroy lives with his parents] on June 30, 2009. A laptop and desktop computer were seized. Officers also recovered 'journals' which bore handwriting like the handwriting in the 'journals' found in the river. Officers also found images of child pornography (Count Six) that had been printed out onto paper and stapled together.

The desktop computer is not in working order. Forensic analysis on the laptop computer (Counts Four and Five) has revealed approximately 376 images of child pornography and 13 videos of child pornography. Many of these images are known images that SA Crocker recognizes from other investigations. The images were saved in a Limewire folder in allocated space. The images were then subdivided into folders by category such as "prepubescent."

(Crim. Doc. 17 at 3-5 (footnote omitted).  It suffices to say that such a stipulation is more than enough to establish that LeCroy's receipt and possession of child pornography, as alleged in the indictment, was "knowing" for purposes of the statute.  *See United States v. Woods*, 684 F.3d 1045, 1057-58 (11th Cir. 2012); *United States v. Pruitt*, 638 F.3d 763, 765-66 (11th Cir. 2011).

And lastly, LeCroy's Claim (5) above encompasses several subclaims to the effect that a number of sentencing enhancements under § 2G2.2(b) of the United States Sentencing Guidelines are unconstitutional.  Any such claims, however, are barred by the statute of limitations of § 2255(f) for the same reasons applied to Claim (1) discussed immediately above.  But even assuming they were timely, these claims are also all without merit, as explained below.

LeCroy first attacks U.S.S.G. § 2G2.2(b)(3), which applies "if the offense involved ... distribution."  LeCroy was convicted of possession and receipt of child pornography, not of its distribution.  But he could be found to have engaged in distribution for purposes of § 2G2.2(b)(3) if he posted images on a website for public viewing or made them accessible over the internet though a peer-to-peer file-sharing program or network.  *See United States v. Creel*, 783 F.3d 1357, 1359-61 (11th Cir. 2015).  LeCroy contends that such conduct is not subject to regulation under the Commerce Clause. (Doc. 1 at 14).  The court concludes, however, that this claim cannot prevail in light of the Eleventh Circuit's binding decisions in *Smith*, *Maxwell*, *Parton*, and *Grzybowicz*.

LeCroy also claims that U.S.S.G. § 2G2.2(b)(7) is infirm because it calls for a sentencing increase based on the number of videos and images that include those, LeCroy says, that a defendant downloaded without "knowing" they contained child pornography.  (Doc. 1 at 14).  However, what § 2G2.2(b)(7) actually provides for is an increase "if the offense involved" a given number of images.  The "involved" receipt and possession "offenses" to which LeCroy

11

pled guilty each contain a mens rea element that the defendant's conduct be done "knowingly." 18 U.S.C. §§ 2252A(a)(2), (a)(5)(B). It is therefore unsurprising that the Eleventh Circuit has indicated that § 2G2.2(b)(7) operates on the same principle, contrary to LeCroy's suggestion. *See United States v. Patrick*, 363 F. App'x 722, 725-26 (11th Cir. 2010) ("The district court did not clearly err in finding that Patrick *knowingly* possessed more than 600 images of child pornography [so as to enhance his sentence under § 2G2.2(b)(7)(D)]." (emphasis added)); *see also United States v. Nissen*, 666 F.3d 486, 491 (8th Cir. 2012) ("A court is permitted to rely on circumstantial evidence that demonstrates knowing possession of a certain number of images when deciding whether USSG § 2G2.2(b)(7)(D) applies." (citing *Patrick, supra*)). And to the extent that this particular subclaim is a repackaging of Claim (1), above, applied to LeCroy's sentencing guidelines calculation, it is due to be rejected on the same basis as Claim (1).

LeCroy next challenges U.S.S.G. § 2G2.2(b)(6), which calls for a two-level increase "if the offense involved the use of a computer or an interactive computer service." He says that this provision is invalid under *Sebelius* because it "obliterates the distinction between what is national and what is local." (Doc. 1 at 14). However, this argument is also defeated for the same reasons as LeCroy's other claims founded on *Sebelius* and his assertion that his use of a computer and the internet to obtain the images is not interstate commerce sufficient to establish a "jurisdictional hook."

And lastly, LeCroy claims that all of the enhancements in U.S.S.G. §§ 2G2.2(b) are unconstitutional because they because they begin with the word "if." (Doc. 1 at 15). More specifically, he claims that the use of the word "if" means that these enhancements can be applied based on an "'assumption,' which is in direct opposition to the common meaning of knowingly." (*Id.*) Therefore, he continues, "these enhancements can not be considered

'knowingly,' but are actually prophesied by title and search-word only." (*Id.*) This claim, however, is simply meritless. On its face, the use of the word "if" in these guidelines provisions means that the applicability of each particular guideline is conditional and depends upon whether the court finds that the substantive requirements of that guideline have been established by the evidence. The word "if" in this context has nothing to do with whether a defendant's conduct was knowing or not. This claim is patently without merit.

## V.

Having carefully reviewed and considered *de novo* all the materials in the court file, including the magistrate judge's report and recommendation and LeCroy's objection thereto, the court is of the opinion that the magistrate judge's findings are due to be and are hereby **ADOPTED** and his recommendation is **ACCEPTED**, as modified herein. LeCroy's objections are **OVERRULED**. As a result, LeCroy's § 2255 motion is due to be **DENIED**. Further, the court concludes that motion does not present issues debatable among jurists of reason, so a certificate of appealability is also due to be **DENIED**. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000); Rule 11(a), RULES GOVERNING § 2255 PROCEEDINGS; A separate Final Order will be entered.

Done this 25th day of November 2015.

_____
L. Scott Coogler
United States District Judge
[160704]